UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JAMES MEDINA,<br><br>       Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI, acting<br>Commissioner of Social Security,<br><br>       Defendant. | No. 1:20-cv-01714-GSA<br><br>**ORDER DIRECTING ENTRY OF<br>JUDGMENT IN FAVOR PLAINTIFF AND<br>AGAINST DEFENDANT<br>COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 19, 22)** |

**I.    Introduction**

Plaintiff Robert James Medina ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  Docs. 19, 22, 23.  After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision.  Plaintiff's appeal is therefore granted.

**II.    Factual and Procedural Background[2]**

On November 7, 2017 Plaintiff applied for disability insurance benefits alleging disability as of July 5, 2017 due to depression, chronic pain, sleep apnea, anxiety and carpal tunnel. AR 178. The Commissioner denied the application initially on January 24, 2018 and on reconsideration on April 12, 2018. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on February 13, 2020. AR 103–138. On March 18, 2020 the ALJ issued a decision denying Plaintiff's application. AR 15–28. The Appeals Council denied review on September 30,

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 7 and 9.
[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

2020. AR 1–6. On December 4, 2020 Plaintiff filed a complaint in this Court. Doc. 1.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-

2

(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of November 7, 2017. AR 18. At step two the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with L4/S1 radiculopathy; degenerative disc disease of the cervical spine with radiculitis/radiculopathy; degenerative joint disease status post bilateral total hip arthroplasties; myofascial pain syndrome; keratoconus of the right eye; anxiety; and major depressive disorder. AR 18. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: history of appendicitis; cholelithiasis; atelectasis versus pneumonia; anemia; sleep apnea; restless leg syndrome; vitamin D deficiency; obesity; and carpal tunnel syndrome. AR 18. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18–21.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a reduced range light work as defined in 20 C.F.R. 416.967(b) with the following limitations: sit 6 hours in a workday and 1 hour at a time; stand/walk

3

4 hours in a workday and 30 minutes at a time requiring "a brief 1-2 positional change" after 30 minutes on his feet at one time; requires cane use for prolonged walking; occasionally operate foot controls; occasionally climb, stoop, kneel, crouch, and balance; frequently reach overhead; frequently push and pull; avoid ordinary workplace hazards; avoid unprotected heights; occasionally work with mechanical parts or operate a motor vehicle; can understand, remember, and carry out simple instructions and maintain concentration, persistence or pace for those simple instructions for 2 hour intervals after which he would require a 10 minute break accommodated by normal morning, afternoon, and lunch breaks; can have occasional interactions with coworkers, supervisors, and the public.  AR 21–26.

At step four the ALJ concluded that Plaintiff could not perform his past relevant work as a dryer operator, production supervisor, or machine setup person.  AR 26.  At step five, in reliance on the Vocational Expert's (VE) testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: office helper, router, and routing clerk.  AR 27.  Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since his application date of November 7, 2017.  AR 27.

## V.   **Issues Presented**

Plaintiff asserts two claims of error: 1) that the ALJ improperly disregarded Plaintiff's pain testimony; and 2) that the ALJ erred in formulating the RFC with respect to his visual limitations.

### A.   **Plaintiff's Subjective Testimony**

#### 1.   **Applicable Law**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The ALJ is responsible for determining credibility,[3] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the

---

[3] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

### 2. **Analysis**

Plaintiff's first meaningful interaction with the content of the ALJ's opinion begins at page 34 of the 38 page brief. Plaintiff's argument section contains no description or citation to the testimony he contends should have been accepted by the ALJ, or any representative sample thereof.

Despite the ALJ's use of boilerplate language finding Plaintiff's testimony "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," the ALJ did in fact include many limitations in the RFC at least partially in consideration of Plaintiff's testimony. For example, Plaintiff testified he can stand no more than 30 minutes at one time. AR 124. Consistent with that testimony, the ALJ included a restriction in the RFC limiting Plaintiff to no more than 30 consecutive minutes on his feet. AR 21. In other respects (such as weight lifting capacity) the ALJ accepted that Plaintiff was substantially limited (light exertional capacity requires frequently lifting 10 and occasionally 20 lbs) but not quite as limited as Plaintiff contended (that he could lift no more than a gallon of milk). AR 21, 124. In

still other respects the ALJ rejected Plaintiff's testimony in part, but the rejection thereof was clearly not outcome determinative. For example, Plaintiff testified he requires a cane to stand and walk (AR 126-27), the RFC reflects that he requires a cane only for "prolonged ambulation," (AR 21), but in response to a hypothetical the VE testified that an individual who requires a cane for any standing and walking could still perform the identified jobs.

Here, Plaintiff's argument from the outset does little more than critique the persuasiveness of the ALJ's reasoning very generally while passing the responsibility to the ALJ to "identify *which* of Mr. Medina's statements she rejected" and "identify *which* evidence undermined his testimony." Br. at 33, Doc. 19 (emphasis in original).

Although prevailing case law does require specificity on the ALJ's part in rejecting testimony, it also holds that Plaintiff bears the burden of establishing harmful error on appeal. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability."); *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted).

Meeting that burden requires Plaintiff to provide some specify of his own, namely identifying the statements he made which were not incorporated into the RFC, what evidence supports such statements, and why the acceptance of such statements as true would be outcome determinative (such as the weight lifting limitation). *See Juniel v. Saul*, No. 1:20-CV-0421 JLT, 2021 WL 2349878, at *7 (E.D. Cal. June 9, 2021) ("Plaintiff fails to show this limitation to which he testified—and the ALJ acknowledged remained in the treatment records—was not properly accounted for in his residual functional capacity, which indicated Plaintiff 'could not have public contact' and limited interaction with co-workers"). Combatting ambiguity with additional ambiguity does not establish a meritorious claim

Addressing Plaintiff's argument as presented, the ALJ's reasoning was nevertheless clear and convincing, though it was not without flaws. In rejecting his testimony the ALJ discussed the objective medical evidence. First, the ALJ acknowledged the abnormal electrodiagnostic testing and imaging of his spine. AR 22. The ALJ further noted examination findings including muscle spasm, limited range of motion, tenderness over cervical and lumbar spine, gait instability, bilateral leg weakness, and mildly reduced upper extremity strength. AR 22–23. The ALJ noted countervailing examination findings on the same subjects, as well as neurological examinations generally noting normal sensation and reflexes. AR 23. Finally, the ALJ noted the consultative examination results which reflect that he walked with a cane but at normal speed, easily got on and off the examination table, bent at the waist without issue, exhibited negative straight leg raise, 5/5 strength, intact sensation, and good dexterity. AR 23.

On balance, the ALJ found that the objective record supported many limitations as set forth in the RFC, but did not support a greater degree of limitation. *Id.* Thus the finding is supported. Despite mild to moderate findings on imaging and electrodiagnostic testing, the record contained mixed findings on physical examination and generally normal findings during the consultative examination.

Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). As to the remaining evidence, the ALJ noted as follows:

> Despite his reports that he requires assistance from his parents for cooking and household chores, the record shows he is capable of cooking and cleaning (C12F/2). The record shows he occasionally drives (C12F/2). The record shows the claimant also shops and performs his own activities of daily living without assistance (C12F/2).

Plaintiff contends the ALJ did not satisfy either of the permissible grounds for relying on daily activities to reject testimony, namely (1) if the daily activities contradict the claimant's other

testimony; of (2) if "a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue, 495 F.3d 625*, 639 (9th Cir. 2007).  Plaintiff emphasizes his father's testimony, consistent with his own, that his parents travel three times weekly from Bakersfield to clean, bring him cooked meals, do laundry, and take him to medical appointments.  AR 333–340.

Importantly, the ALJ's broad conclusion that the record as a whole demonstrates he shops and performs activities of daily living without assistance is not supported by substantial evidence. The lone citation is to the consultative examiners report at page 2 in which the examiner noted "He does cook and clean. He occasionally drives. He does shop and perform his own activities of living without assistance and does a bit of walking and some physical therapy for exercise." AR 1100.

Although an ALJ may certainly note inconsistent statements made by the Plaintiff in the record, it is important to keep the context of the particular record in mind.  The purpose of the consultative examination is for an impartial physician to physically examine the claim and provide an expert opinion as to the impact of the claimant's medical impairments on his ability to work. The examiner's role is not to conduct an exhaustive inquisition into Plaintiff's activities of daily living and report back to the ALJ.  Indeed, as the above-quoted material demonstrates, the section of the examiner's report labelled "activities of daily living," does not purport to be an exhaustive report.  It is an aside, one which is devoid of detail and context which begs more questions than it answers.  It is second hand information told by the claimant to the examiner with no indication as to what precisely was asked, and what answer was given.

The consultative examiner's abridged notation concerning Plaintiff's ADLs has limited probative value as compared to the detailed testimony offered by the Plaintiff directly to the ALJ at the administrative hearing, and the detailed third party function report prepared by his father. This is not a case where the claimant made conflicting statements in oral testimony, written function

reports, or in statements to treating providers regarding the nature and extent of his daily activities. Moreover, the examiner's statements do not suggest daily activities of sufficient variety or extent to meet the threshold for transferable work skills.  Thus, the ALJ could not rely on those statements to reject Plaintiff's testimony.  *Orn v. Astrue, 495 F.3d 625*, 639 (9th Cir. 2007). ,

As for additional factors subject to consideration by the ALJ in evaluating the testimony, Plaintiff cites *Fair* and *Thomas* for the proposition that an ALJ may consider the following five factors: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *See, Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also, Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

Nothing in *Fair* suggests the Ninth Circuit was articulating an exhaustive list, and the language used in *Thomas* makes it clear that the list was not exhaustive: "The ALJ may consider *at least t*he following factors when weighing the claimant's credibility . . ."  *Thomas*,  278 F.3d at 958–59 (emphasis added).

The five factors cited above are certainly the most common ones referenced by ALJs in making credibility determinations.  The ALJ only discussed two of them here, namely the objective medical record and Plaintiff's ADLs, the former of which cannot stand alone and the latter of which was unpersuasive.  Nevertheless, the inquiry does not stop here.  Defendant also cites *Carmickle* in which the Ninth Circuit upheld an adverse credibility determination where an ALJ rejected a claimant's testimony in favor of an examining physician's opinion on the same subject.  *See Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1161 (9th Cir. 2008) ("[t]he ALJ also

rejected Carmickle's testimony that he can lift only 10 pounds occasionally in favor of Dr. Patton's contradictory opinion that he can lift up to 10 pounds frequently.").

Similarly here, the consultative examining physician, Dr. Wagner, opined that Plaintiff was capable of performing a reduced range of light work with various limitations that the ALJ essentially adopted in the RFC, except for a limitation regarding noise exposure. AR 1104. As in *Carmickle*, this was a legitimate basis to reject Plaintiff's contrary testimony.

As for the specificity of the ALJ's reasoning, Plaintiff contends the ALJ fell short of the level of specify required by the Ninth Circuit which has held an ALJ must "specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Br. at 32, quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  The Ninth Circuit has never stated in so many words, however, that an ALJ must match each piece of applicable testimony with the piece of record evidence that purportedly undermines it.  Requiring such specificity would subject every ALJ decision to remand.

Here, the ALJ's analysis proceeded in the same fashion these analyses invariably proceed. First, the ALJ summarized the pertinent aspects of Plaintiff's testimony and then indicated it was not entirely consistent with the record "for the reasons explained in this decision." Provided those reasons ultimately follow, there is nothing inherently problematic with this approach. What followed was not so much an analysis of the Plaintiff's testimony but more the ALJ's affirmative reasoning in support of the RFC.

The RFC was supported by the objective medical evidence including: mixed or negative findings on physical examination concerning range of motion, joint tenderness, gate, posture, strength, muscle spasm, reflexes, and sensation.  The ALJ's reasoning was also supported by subjective evidence including Dr. Wagner's examining opinion.  Plaintiff's critique of isolated subsets of the ALJ's opinion, although partially persuasive, does not establish a basis for remand.

The reasoning identified in support of the RFC was equally applicable to the ALJ's rejection of Plaintiff's contrary testimony even though the ALJ did not match each piece of evidence to the specific testimony it purportedly undermined. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (noting that a reviewing court is not deprived of its faculties in drawing inferences between related sections of an ALJ's opinion, if those inferences are to be drawn); *Wilson v. Berryhill*, 757 Fed. Appx. 595, 597 (9th Cir. 2019) ("Even if this portion of the [ALJ's] ruling is not a model of clarity, the ALJ's 'path may reasonably be discerned,' and so the court will still defer to the ALJ's decision"), quoting *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012)). The ALJ's reasoning for rejecting Plaintiff's testimony was clear and convincing.

### B.  The Vision Limitations

The ALJ found that Plaintiff suffers from keratoconus of the right eye. AR 18. Keratoconus is a progressive condition in which the cornea gradually thins and bulges outward into a cone shape.

In consideration of Plaintiff's visual limitations, the ALJ found that Plaintiff must avoid unprotected heights and can only occasionally work with mechanical parts/operate a motor vehicle. AR 21.

In so concluding, the ALJ explained as follows:

> [T]he record shows he exhibits irregular topography with vision potential of 20/40 in the right eye after diagnostic contact lens fitting. (AR 716) The record shows that the claimant is unable to read the top line of the eye chart with his right eye, his best left corrected vision is 20/50. (AR 1101, 1103) The record shows that while the claimant indicates an inability to drive due to blurred vision, he maintains his license. (AR 1540) Accordingly, the residual functional capacity takes into consideration the claimant's visual impairment by finding he must avoid unprotected heights and can only occasionally work with mechanical parts/operate a motor vehicle.

AR 23.

Plaintiff disputes the accuracy and sufficiency of the ALJ"s reasoning on three grounds. First, he contends that the ALJ's reference to his best corrected vision presupposes that he is able

to correct his vision at all, when in fact the record reflects that his insurance will not cover the needed scleral lenses and he cannot afford them.

Plaintiff cites *Trevizo* in which the Ninth Circuit stated that "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Trevizo v. Berryhill*, 871 F.3d 664, 680-681 (9th Cir. 2017), *quoting Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). In *Trevizo*, the Ninth Circuit reversed and remanded where the ALJ discounted the severity of the claimant's conditions due to unexplained failure to follow a prescribed course of treatment which, according to the claimant, she could not afford. Here, by contrast, the ALJ did not fault Plaintiff for failing to follow a prescribed course of treatment, but rather presumed without support that he would have access to the prescribed course of treatment (the scleral lenses), ignoring his testimony to the contrary. It is a subtle distinction but, nevertheless, *Trevizo* is not on all fours with the case at bar.

Plaintiff cites his testimony and medical records to establish that he needs scleral lenses and cannot obtain them. AR 137, 398, 403, 715–16. Plaintiff's optometrist who identified the 20/40 best corrected visual acuity number did recommend he be fitted for scleral lenses in the future. AR 715–16. Other than his own statements to treating providers, however, there is no evidence to support his contention that scleral lenses are not covered by his insurance, or that scleral lenses were his only viable option. His optometrist's recommendation does not address insurance coverage. His optometrists' recommendation that he be fitted for scleral lenses strongly suggests that those lenses would be optimal, but not necessarily that no other types of lenses would improve his vision (even if not to 20/40). As explained below, the ALJ had a duty to further develop the record to explore these issues.

Plaintiff contends that the error was not harmless as all three of the jobs identified by the VE – Office Helper, a Router (Clerical) and a Routing Clerk – require frequent near acuity vision

("clarity of vision at 20 inches or less" for up to two-thirds of the workday). (AR 132-133) See also, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Part A at p. 347-348 (relevant pages attached as Exhibit) and Appendix C, Physical Demands, at C-1 [defining "frequently" as an "activity or condition exists [that] exists from 1/3 to 2/3 of the time" and "near acuity" as "[c]larity of vision at 20 inches or less"]. Defendant does not dispute this assertion, and the Court has no basis to conclude the error was harmless.

Plaintiff notes that the page the ALJ cited for the proposition that he maintains his license does not reveal anything of the sort, but rather indicates that Plaintiff failed visual acuity testing and did not have corrective lenses. Be that as it may, the consultative examination notes the ALJ cited in the previous sentence states not only that he had his license but that he occasionally drove. *See* AR 1099 ("50-year old, right handed male identified with a California Driver's License."); AR 1100 ("He occasionally drives."). This suggests Plaintiff did present a driver's license to the consultative examiner on June 29, 2019 for the purposes of identification, though he was driven to the examination by another person. AR 1099. That does not necessarily establish that the license he presented to the consultative examiner was a valid license (as opposed to an expired one), or that Plaintiff had a valid license 8 months later at the administrative hearing.

In relevant part, Plaintiff also offered the following testimony, which is not conclusive:

And they had me, at the DMV, I had to go to the DMV and drive for them every two years instead of every five years. I had a doctor fill out a form for me and they decided if I was going to drive I had to go to the DMV every two years instead of five years like required because of my vision.

ALJ: All right, thank you. Anything you'd like to add, Counsel?

ATTY: No.

ALJ: Thank you.

ATTY: Thank you.

>ALJ: All right. Thank you, Mr. Medina, we'll go off the
>
>record at 11:37.

AR 137.

The ALJ concluded the hearing at that point without following up as to when he last got his license renewed, and how he did so without corrective lenses.

In the response brief, Defendant notes that "20/30 to 20/60 [vision] is considered mild vision loss, or near-normal vision" and "sister courts have held that 20/60 vision was not presumptively disabling." Resp. at 11–12, Doc. 22. This is non-responsive to Plaintiff's claim of error which did not contend that those corrected visual acuity levels are disabling, but that his visual acuity cannot be corrected due to lack of access to the required contact lenses. Defendant also underscores that plaintiff maintained a license and occasionally drove, citing the above-referenced statements from the consultative examiner's report (in addition to a citation to page 40 of the transcript which is actually a 2012 hearing record from a previous decision, not the decision at bar).

As to the fact that he did at one point maintain his license, Plaintiff would ostensibly have to use some form of corrective lenses to get his license renewed, though it is not clear what lenses those were or when he last got his license renewed.

The fact that Plaintiff occasionally drove does not establish that he had access to the needed corrective lenses. Plaintiff testified that his insurance will not cover his eye condition and the consultative examiner's notation that he occasionally drives does not establish otherwise.

As to the lenses Plaintiff needed, there is minimal evidence other than the optometrist's recommendation that he be fitted for scleral lenses and Plaintiff's contention that they are not covered by insurance. AR 715–16. The consultative examiner's report does note that Plaintiff "[t]ried hard contact lenses but couldn't continue using them for whatever reason." AR 1100. The 2017 hearing decision from Plaintiff's prior claim also indicates that his vision improved with "rigid

glass permeable (RGP)" lenses (also known as hard lenses) and that his visual impairment was therefore non-severe. AR 163.

Of note, claimant testified as follows during the 2017 hearing on his prior claim:

A The vision is not very well. I need a special type of contact. I cannot get glasses, and the insurance, I've gone, they referred me, the IQ Vision Center referred me to a place here in Clovis I went to a few months back and they told me they couldn't do it because Medi-Cal didn't cover that type of –

Q Contact?

A -- contact. It's not, it's not a cosmetic type of contact. It's more for my vision to see properly.

Q I know they were talking about like a rigid gas permeable.

A Yes.

Q And so you've had them in the past, but you need a new prescription, is that what the deal is?

A Yes, because my eyesight is worsening.

Q Okay.

A My right eye was worse to begin with, it jumped to my left eye and it's pretty much -- and the last step on that would be a cornea transplant, I believe.

AR 88.[4]

According to the Mayo clinic, traditional soft lenses, RGP (hard) lenses, and scleral lenses are all potential options for treatment of keratoconus depending on the patient's individual needs and the progression of the disease: "In the early stages of keratoconus, you might be able to correct vision problems with glasses or soft contact lenses. Later, you may have to be fitted with rigid, gas

---

[4] Notwithstanding this testimony, in the 2017 decision the ALJ found his keratoconus non-severe in that it was responsive to his RGP lenses. AR 163. Here, the ALJ found that the Chavez presumption of continuing non-disability was rebutted in light of new evidence concerning his vision, among other things. AR 15 (citing Chavez Acquiescence Ruling (Social Security Acquiescence Ruling (AR) 97-4(9)).

permeable contact lenses or other types of lenses, such as scleral lenses. If your condition progresses to an advanced stage, you may need a cornea transplant."[5]

In contrast to the previous ALJ decision, the ALJ here made no findings as to what eye care Plaintiff is currently receiving, and did not address his contention that his insurance coverage was an obstacle.  Rather, the ALJ simply found that Plaintiff's best corrected visual acuity was 20/40 on the right and 20/50 on the left.

The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150.  A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

Given his optometrist's recommendation that he be fitted for scleral lenses (ostensibly to achieve the best corrected visual acuity numbers the optometrist referenced), and the Plaintiff's testimony that he lacks access to the needed corrective lenses, the ALJ had a duty to inquire further as to what corrective lenses Plaintiff requires and what he has reasonably available to him.[6]

It may be the case that the RGP (hard) lenses referenced in the prior ALJ's decision are still a viable option, though perhaps not the optimal option or preferred option.  Even if so, it is unclear whether his best corrected visual acuity numbers would vary between RGP and scleral lenses (because the numbers identified by the optometrist seemingly presumed use of scleral lenses), or

---

[5] https://www.mayoclinic.org/diseases-conditions/keratoconus/symptoms-causes/syc-20351352#:~:text=Keratoconus%20(ker%2Duh%2Dtoe,sensitivity%20to%20light%20and%20glare.

[6] This inquiry might have been fulfilled (though not necessarily so) had the ALJ asked how Plaintiff renews his license without any corrective lenses.  Simply noting that he maintains a license, without elaboration, does not suggest the ALJ made any connection between license renewal and corrective lenses, or rendered the decision on that basis.

how that visual acuity would impact his ability to perform the jobs identified by the VE or other jobs in the national economy.  It also may be the case that his optometrist recommended scleral lenses because his disease has progressed to the point where no other lenses are a viable option.  In any case, the insurance coverage and affordability of either type of lenses is not sufficiently established in the record.  The ALJ had a duty to resolve the ambiguity on these issues.

## VI.    Conclusion and Remand for Further Proceedings

Remand is appropriate for the ALJ to conduct additional proceedings including additional hearing testimony and/or consultation with an appropriate expert to determine what corrective lenses, if any, Plaintiff reasonably has access to, whether their continued use is viable given the progression of his keratoconus (if any), and whether his resultant visual acuity is sufficient to perform the identified jobs or other jobs existing in significant numbers in the national economy. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

## VII.    Order

For the reasons stated above, the Court finds that substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is granted.  The Clerk of Court is directed to enter judgment in favor of Plaintiff Robert James Medina, and against Defendant Kilolo Kijakazi, acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **September 10, 2022**                          **/s/ Gary S. Austin**
                                                                         UNITED STATES MAGISTRATE JUDGE